[Civ. No. 31774. Second Dist., Div. Three. Oct. 17, 1968.]

FRANK A. LOMBARDY et al., Plaintiffs and Appellants, v. PETER KIEWIT SONS' CO. et al., Defendants and Respondents.

Fadem & Kanner and Gideon Kanner for Plaintiffs and Appellants.

Veatch, Carlson, Dorsey & Quimby, Robert P. Dorsey, Henry F. Walker, Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Richard L. Franck, Charles E. Spencer, Jr., and Jack M. Miller for Defendants and Respondents.

SHINN, J.*—The action is for damages claimed to have been sustained as a result of the construction and operation of the San Gabriel River Freeway in Los Angeles County. Plaintiffs are the owners of property adjacent to the freeway; defendants are the State of California and Peter Kiewit Sons' Co., a corporation. Plaintiffs are husbands and their wives who own, separately, four lots in Tract 16943; four lots in Tract 16944 and one lot in Tract 16914. The state, by and through the Department of Public Works, installed the freeway; Peter Kiewit Sons' Company was the contractor under contract with the state.

The complaint (third amended) purports to state a cause of action for physical damage to the real property of plaintiffs, for damage to their rights under tract restrictions and for detriment caused them upon the theory that the freeway constitutes a nuisance.

The demurrers of the defendants to the third amended complaint were sustained without leave to amend, judgment was entered in favor of the defendants and plaintiffs appeal. We have concluded that the complaint fails to state a cause of action upon any theory and that the judgment should be affirmed.

With respect to the alleged damage to the real property of plaintiffs the action is in inverse condemnation and compensation is claimed under article I, section 14 of the California Constitution, the Fifth and Fourteenth Amendments of the United States Constitution and state legislation.

The requisites of a complaint in inverse condemnation are stated in Chadbourn, Grossman and Van Alstyne, California Pleading, section 896, pp. 850-851.[1]

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] "A mere general allegation that in the course of constructing a public improvement the defendant damaged or took the plaintiff's land is insufficient to state a cause of action in inverse condemnation. A considerable volume of litigation has documented the fact that the line between compensable takings and damagings and those which are regarded as *damnum absque injuria* is indeed a fine one marked by narrow and in some cases apparently arbitrary factual distinctions. In order to clarify the issues, and to eliminate so far as possible those claims which are founded on noncompensable takings or damagings, it is thus desirable and consistent with efficient judicial administration to plead the

The complaint reads in part as follows:

"6

"In the process of construction and operation of the above described freeway and as a proximate, direct and necessary result of the plan, design, execution, construction, maintenance and operation thereof, Defendants used or caused to be used various machinery, equipment, labor and materials, in a manner which the Plaintiffs do not know to have been or not been required by the plans and specifications and the precise nature of which is not known to Plaintiffs but all of which is known to Defendants. Thereby Plaintiffs and their property have been subjected to noxious fumes, loud noise, dust-laden air, shocks and vibrations, imminent hazards from foreseeable accidents and collisions on the freeway, and mental, physical and emotional distress resulting therefrom. The above-described acts and conditions have caused loss of sleep, eye irritation, difficulty in breathing, difficulty in hearing conversations and broadcasts, and have been an unceasing source of worry, disturbance and irritation. . . .

"13

"That as a proximate result of said acts by the Defendants and each of them, Plaintiffs have sustained and incurred and are certain in the future to sustain and incur, losses, injuries and damages to real property and person in excess of $5,000.00 per Plaintiff, the exact amount of which presently cannot be ascertained. Plaintiffs request leave of court to amend this Complaint to insert the amount thereof when the same has been ascertained."

There was no allegation that the land of plaintiffs had sunk or shifted, the foundations of the houses had sunk, that walls had been cracked, windows broken or that the buildings had sustained any other type of injury or damage.

The allegation that the described acts of defendants have caused "damages to real property and person in excess of $5,000.00 per Plaintiff" was not an allegation that the real property of plaintiffs has sustained damage in any substantial amount.

No recovery in inverse condemnation may be had unless

facts showing what the defendant did and how the injury occurred in specific detailed allegations. In view of the fine distinctions drawn in the substantive law of inverse condemnation, the pleader's primary concern should be directed toward stating the facts in a manner which will correspond to some recognized theory of compensable damages."

damage in a substantial amount to the property itself has been sustained. (*Albers* v. *County of Los Angeles*, 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129] ; *Frustuck* v. *City of Fairfax*, 212 Cal.App.2d 345, 364 [28 Cal.Rptr. 357].)

 The mental, physical and emotional distress allegedly suffered by plaintiffs by reason of the fumes, noise, dust, shocks and vibrations incident to the construction and operation of the freeway does not constitute the deprivation of or damage to the property or property rights of plaintiffs for which they are entitled to be compensated. In *People* ex rel. *Department of Public Works* v. *Symons*, 54 Cal.2d 855, 860-862 [9 Cal.Rptr. 363, 357 P.2d 451], it was said: "It is established that when a public improvement is made on property adjoining that of one who claims to be damaged by such general factors as change of neighborhood, noise, dust, change of view, diminished access and other factors similar to the damages claimed in the instant case, there can be no recovery where there has been no actual taking or severance of the claimant's property. (*Bacich* v. *Board of Control*, 23 Cal.2d 343 [144 P.2d 818] ; *Rose* v. *State, supra,* 19 Cal.2d 713 [123 P.2d 505] ; *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149] ; *Reardon* v. *San Francisco,* 66 Cal. 492, 506 [6 P. 317, 56 Am.Rep. 109].) " Later cases are in accord. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250; *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719] ; *Katcher* v. *Home Sav. & Loan Assn.,* 245 Cal.App. 2d 425 [53 Cal.Rptr. 923].)

 It was alleged in the complaint that the construction and operation of the freeway created an eyesore and "It also interferes with and obstructs the view of and from Plaintiffs' homes and is an unsightly change in the character of the Plaintiffs' neighborhood in violation of deed restrictions of Tracts No. 16194, 16943, and 16944, which restrictions limit the uses within the Tracts to single family residential and non-offensive activities." It was alleged that plaintiffs have been deprived of their property rights in the tract restrictions and have not been paid compensation for loss of the same.

Appellants are contending for an extravagant extension of the rights created by the customary restrictions upon the use of property in residential subdivisions. If such restrictions constituted property rights free from any type of interference, every owner of a lot in a restricted tract would have to

be a party to a grant of a right of way, or an action to condemn the same, over any portion of the tract. No such roadblock to the development of local and state transportation systems exists.

Under the heading "Governmental interference with property owners rights under deed restrictions is a compensable taking and damaging of property" appellants say, "Poised in the path of appellants' argument on the point suggested by the above headline, is the 37-year-old decision in *Friesen* v. *Glendale* (1930) 209 Cal. 524 [288 P. 1080], holding that deed restrictions are not compensable because they are not property but rights of a contractual nature. Nevertheless, appellants respectfully submit that this court should reach a contrary result for the following reasons. . . ." Appellants then cite a number of cases of the United States Supreme Court, contending that they abrogate the rule declared in *Friesen.*

The opinion in *Friesen* discusses the nature of building restrictions as negative easements or equitable servitudes as it has long been recognized and defined in California law.

In *Friesen* it was sought to enjoin the installation of a street through a subdivision upon the ground that the same would violate rights of the lot owners under restrictions "That said premises shall be used for residence purposes only." The basis of the court's holding was expressed in the following statements (pp. 529-530) : " [5] It is also well established that the 'provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land.' (*Werner* v. *Graham,* 181 Cal. 174 [183 P. 945] ; 7 Cal.Jur., p. 733.) This rule would seem to be especially applicable where the title to the land is acquired by a municipality for public street purposes. To construe the instrument strictly in favor of the servitude would impose upon the city the obligation to use the land acquired for residential purposes only, a use to which the city obviously has no power to devote land acquired for street purposes. A construction strictly against the covenant would permit the city to acquire the land freed from the restriction. [6] Furthermore, a duly enacted law providing for such a restriction, binding upon private parties, is not binding upon the sovereign unless it appear expressly or by necessary implication that the sovereign consented to be so bound. (*C. J. Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 P. 676].) Much less would the city be bound by the terms of a

private contract to which it was in nowise a party." And, further, ". . . parties may not by mutual covenants in private contracts create for themselves an estate in land not known to our law and thus entitle them to compensation where no such right existed before."

■ It is the law in California that building and use restrictions of a residential tract do not constitute an interest in land vested in the lot owners which is damaged by the construction of a state freeway through the tract.

■ The complaint fails to state a cause of action in inverse condemnation.

■ Next to be considered is the contention that the defendants have created a nuisance. The facts relied upon are those stated in the paragraphs of the complaint set out above. We must accept as true the allegation that the plaintiffs have suffered mental, physical and emotional distress, irritation and worry as a result of the construction and operation of this freeway. All householders who live in the vicinity of crowded freeways, highways and city streets suffer in like manner and in varying degrees. The roar of automobiles and trucks, the shock of hearing screeching brakes and collisions, and the smoke and fumes which are in proportion to the density of the motor vehicle traffic all contribute to the loss of peace and quiet which our forefathers enjoyed before the invention of the gas engine.

■ The described conditions occurring on state constructed highways do not constitute a nuisance in a legal sense. State highways are constructed and maintained under the authority of article IV, section 36, of the state Constitution, Government Code, sections 14000, 14001, and Streets and Highways Code, sections 90 et seq. Civil Code section 3482 states "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." In *Larson* v. *Santa Clara Valley Water Conservation Dist.*, 218 Cal.App.2d 515, 526 [32 Cal.Rptr. 875, 8 A.L.R.3d 665], it was held in reliance upon section 3482 that the construction and operation of a dam under legislative authority did not constitute a nuisance. (See *Zeppi* v. *State of California*, 174 Cal.App.2d 484 [345 P.2d 33]; *Vater* v. *County of Glenn*, 49 Cal.2d 815, 820 [323 P.2d 85]; *Liebman* v. *Richmond*, 103 Cal.App. 354, 357 [284 P. 731].)

■ The conditions of which appellants complain are obnoxious to all persons who live in close proximity to the state's freeways but they must be endured without redress.

In view of our conclusion that plaintiffs have no cause of action for nuisance when the construction was state authorized, it is unnecessary to discuss the state's argument that plaintiffs have failed to claim detriment special to themselves. It is also unnecessary to discuss the contention that the complaint fails to allege sufficiently that plaintiffs filed a claim against the state under Government Code sections 905.2, 911.2, 945.4 and 945.6.

The complaint purported to allege negligence on the part of Peter Kiewit Sons' Co. in the construction of the freeway. This claim is not pressed on the appeal; it is therefore unnecessary to consider additional arguments of this defendant in support of the judgment in its favor.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied November 13, 1968, and appellants' petition for a hearing by the Supreme Court was denied December 11, 1968.