[Civ. No. 46342. Second Dist., Div. Two. April 27, 1976.]

JOSEPH HECTON et al., Plaintiffs and Appellants, v.
THE PEOPLE EX REL. DEPARTMENT OF TRANSPORTATION,
Defendant and Respondent.

**COUNSEL**

Mira & Kerr and William A. Kerr for Plaintiffs and Appellants.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams, Robert W. Vidor and Elbert E. Hensley for Defendant and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Joseph and Gigii Hecton appeal the judgment of dismissal after the trial court sustained without leave to amend the demurrer of the People of the State of California acting by and through the Department of Transportation, to their complaint for damages for diminution in value of property due to condemnation of adjacent properties for construction of a freeway.

The first amended complaint alleges: Plaintiffs own a 40,000-square-foot parcel of property at 10, 620-10, 636 East Imperial Highway, Norwalk, on which they operate a shopping center including a 7-11 store, meat market, cocktail lounge, liquor store, bicycle shop, donut shop, beauty salon, barber shop and automobile supply store. Between 1970 and 1972 defendant acquired about 50 acres of land surrounding and immediately adjacent to plaintiffs' land for use as part of an extension of the Century Freeway. Occupants of the acquired properties moved

elsewhere. In acquiring the properties, defendant failed in its responsibility to preserve and enhance the environment and to comply with federal environmental protection statutes. (See *Keith* v. *Volpe* (C.D.Cal. 1972) 352 F.Supp. 1324, affd. 506 F.2d 696, cert. den., 420 U.S. 908 [42 L.Ed.2d 837, 95 S.Ct. 826].) Defendant's acquisition caused a $100,000 diminution in the fair market value of plaintiffs' property due to loss of business. This taking violated state and federal law and was an inverse condemnation. The State Board of Control denied plaintiffs' claim for compensation.

Plaintiffs contend their complaint states a cause of action in tort for violation of federal and states statutes and does or could be amended to state a cause of action for inverse condemnation.[1]

■ For their claim in tort, plaintiffs concede the federal and state environmental protection statutes (National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq.; California Environmental Quality Act (CEQA), Pub. Resources Code, § 21000 et seq.) in themselves create no cause of action for damages for violation of their provisions. Plaintiffs contend, nevertheless, that violation of NEPA[2] or CEQA does create liability pursuant to Government Code section 815.6: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The environmental protection acts, however, are not designed to protect against the particular risk of loss claimed here—decline in commercial value of property adjacent to a public project. Rather the acts are intended to ensure consideration of qualitative environmental factors as well as quantitative economics in proposed actions affecting the environment. (See *Friends of Mammoth* v. *Board of Supervisors*, 8 Cal.3d 247, 254-255 [104 Cal.Rptr. 761, 502 P.2d 1049].) Government Code section 815.6 thus gives plaintiff no grounds for action in tort on the facts alleged in their complaint.

---

[1] The trial court dismissed the action on the ground that the court had no jurisdiction over an action for violation of federal statutes and for interpretation of federal law and cases. If the demurrer was properly sustained without leave to amend for this or any other reason, the dismissal must be upheld. (*Friendly Village Community Assn., Inc.* v. *Silva & Hill Constr. Co.*, 31 Cal.App.3d 220, 224 [107 Cal.Rptr. 123].)

[2] We assume, without deciding, that the trial court could consider ramifications of federal law.

■ For their claim in inverse condemnation, plaintiffs first contend that against a general demurrer the mere allegations of taking or damage to plaintiffs' property are sufficient to support their complaint. We disagree. The allegations of taking or damage are but legal conclusions. Plaintiffs' claim to inverse condemnation rests on their constitutional right to "just compensation" (U.S. Const., Amend. V; Cal. Const., art. I, § 19), and "just compensation" is not the same as "total indemnification." (*Community Redevelopment Agency* v. *Abrams,* 15 Cal.3d 813, 827 [126 Cal.Rptr. 473, 543 P.2d 905].) Whether compensation is just in the constitutional sense depends on the particular facts of the case, and these facts must be set out in the complaint. (*Lombardy* v. *Peter Kiewit Sons' Co.,* 266 Cal.App.2d 599, 601, fn. 1 [72 Cal.Rptr. 240].)

■. Plaintiffs next contend the facts alleged in their complaint state, or could be amended to state, grounds in inverse condemnation for just compensation. Plaintiffs would add to their complaint allegations that by defendant's conduct plaintiffs' property has lost its "exposure" to adjacent land and its occupants. Defendant removed 225 of 235 residences adjacent to the shopping center and certain shopping center tenants breached their leases, resulting in a loss of revenue and diminution of the fair market value of the property.

Plaintiffs have a right to physical access and visible exposure of their property to surrounding roadways. (*United Cal. Bank* v. *People* ex rel. *Dept. Pub. Wks.,* 1 Cal.App.3d 1, 5-8 [81 Cal.Rptr. 405].) But we are cited no authority for the proposition that plaintiffs have a right to continued availability of a particular clientele that has patronized in the past the particular commercial ventures developed by plaintiffs on their property. The circumstances here seem analogous to those in *Holloway* v. *Purcell,* 35 Cal.2d 220 [217 P.2d 665], where the state undertook to build a freeway which would draw traffic away from the road running past the plaintiffs' places of business. The Supreme Court held that no "taking" necessarily resulted: ". . . The relocation of Route 3 and the construction of the freeway may, as plaintiffs assert, injure their business. They are not, however, deprived of rights of access as abutting owners, and the construction of the highway past their places of business gives them no vested right to insist that it remain there. 'Though appellants for the ensuing twenty-five years have enjoyed the benefits of a greater volume of traffic by their lands and business establishments, than may travel thereby after the new road is opened . . . they now insist upon an extension and perpetuation of those rights and advantages so that they may have a changeless road in a changing world. In our opinion, the . . .

statute [does not] prevent the construction and inclusion in the State highway system of another nearby road deemed to be in the interest of the State . . . though . . . the traffic to appellant's property may be diverted and incidental loss thereby occasioned.' [Citations.]" (35 Cal.2d at p. 230.)

Similarly, in *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818], the Supreme Court stated its view that disadvantages resulting from isolation of a residence are not compensable. The court explained: "The other items of damages claimed by plaintiff are not compensable. He asserts that all the residences, except his own, in a described area in which his property is situated were eliminated by defendants, and that a street railway formerly operating on Sterling Street has been removed. There is no property right appurtenant to plaintiff's property on Sterling Street which entitles him to the maintenance of the residences or the continuous operation of the existing street railway. . . ." (23 Cal.2d at pp. 355-356.)

*Klopping* v. *City of Whittier,* 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], offers no comfort to plaintiffs' cause. *Klopping* involved rental losses occasioned by precondemnation publicity. The court held the condemnee was entitled to compensation for those losses if he could prove the condemning agency unreasonably delayed condemnation or otherwise acted unfairly prior to formal condemnation of the property. At bench, plaintiffs are not subject to condemnation proceedings, delayed or timely. *Klopping* does not stand for the proposition that any rental loss occasioned by conduct of a public entity constitutes a compensable taking.

Plaintiffs ultimately appeal to the concept of "fairness," they should not be made to bear without compensation a disproportionate individual loss in the value of their property in order that society as a whole may gain the benefit of a freeway. It is clear, however, that fairness is not measured by economic loss alone. As we noted in *Morse* v. *County of San Luis Obispo,* 247 Cal.App.2d 600, 603 [55 Cal.Rptr. 710], " 'some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community.' " (See also, *Dale* v. *City of Mountain View,* 55 Cal.App.3d 101, 110 [127 Cal.Rptr. 520].) The economic ramifications of the construction of a freeway are complex and unbounded. Unless losses caused by the construction fall within the constitutional meaning of a taking or damage, it is for the Legislature to draw the balance between individual property rights and

social needs. (*HFH, Ltd.* v. *Superior Court,* 15 Cal.3d 508, 520-523 [125 Cal.Rptr. 365, 542 P.2d 237].)

Thus, the facts alleged in the first amended complaint, or those suggested for amendment by plaintiffs on appeal, fail to state a cause of action against defendant. The demurrer was properly sustained without leave to amend. (*Cooper* v. *Leslie Salt Co.,* 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)

The judgment (order of dismissal) is affirmed.

Compton, J., and Beach, J., concurred.