[Civ. No. 39198. First Dist., Div. Three. Feb. 18, 1977.]

PEERLESS STAGES, INC., Plaintiff and Appellant, v.
SANTA CRUZ METROPOLITAN TRANSIT DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Irwin J. Borof for Plaintiff and Appellant.

Clair A. Carlson, County Counsel, and James M. Ritchey, Assistant County Counsel, for Defendants and Respondents.

OPINION

**SCOTT, Acting P. J.**—Peerless Stages, Inc. appeals from a judgment of dismissal entered after the sustaining of respondents' demurrer without leave to amend. By its first amended complaint, Peerless sought to recover damages under the theory of inverse condemnation for losses it had sustained by reason of competition from a bus system operated by respondent Santa Cruz Metropolitan Transit District (hereinafter, Transit District).

The complaint essentially alleges that Peerless is a common carrier doing business under permits issued by the Public Utilities Commission and the Interstate Commerce Commission. During the period 1954 through 1974, Peerless operated a passenger bus service between San Jose and Santa Cruz. This route included the community of Scotts Valley. In July 1974, respondent Transit District began operating a bus route between Scotts Valley and the City of Santa Cruz "in direct competition with the route of Peerless Stages." Appellant alleges that respondents made no effort to purchase the route or to otherwise compensate Peerless for the losses it has sustained as a result of the competition. These losses are estimated at $300,000. It is also alleged that Peerless' Scotts Valley route is a property right within the meaning of section 19, article I and section 5, article XII of the California Constitution,[1] and that Peerless is therefore entitled to be compensated

---

[1]California Constitution, article I, section 19 provides: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money, determined by the court to be the probable amount of just compensation."

California Constitution, article XII, section 5 provides: "The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with. this article, to confer additional authority and jurisdiction upon the commission, to establish the manner and scope of review of commission action in a court of record, and to enable it to fix just compensation for utility property taken by eminent domain."

for its loss. Peerless further alleges that the compensation provisions of Public Utilities Code section 98300, subdivision (b)[2] defining an "existing system" which must be purchased by Transit District, are null, void and unconstitutional.

The Transit District was created pursuant to the provisions of sections 98000 to 98407. These sections relate solely and specifically to the Santa Cruz Metropolitan Transit District. Sections 98300 to 98305 generally provide that if at any time the Transit District may compete for the patronage of an existing system, it must offer to buy, and in fact ultimately purchase, the existing facilities. The particular provision which Peerless claims to be unconstitutional is that portion of section 98300 which provides: "(b) 'Existing system' means any transit service or system of a publicly or privately owned public utility situated entirely within the district or at least 75 percent of whose revenue vehicle miles for the preceding calendar year were operated within the district." Peerless concedes that it is not an "existing system" within the meaning of the statute, but contends that the legislative definition of existing system is arbitrary, and hence invalid. Peerless cites no authority in support of its contention, but points to inconsistencies in the various transit district enabling acts regarding provisions for compensation to existing systems.

Transit district acts which do not require the district to purchase publicly or privately owned transit systems or compensate them for losses due to competition include: Transit Districts in Counties of Alameda or Contra Costa (§ 24501), Southern California Rapid Transit District (§ 30000), Stockton Metropolitan Transit District (§ 50000), Marin County Transit District (§ 70000), San Diego County Transit District (§ 90000), The Santa Barbara Metropolitan Transit District (§ 95000), Fresno Transit District (appx. 1, § 1.1). The Santa Clara County Transit District (§ 100000 at § 100021) and the Greater Bakersfield Metropolitan Transit District (§ 101000 at § 101014) are required to purchase a publicly or privately owned public utility if at least 40 percent of such utility's revenue vehicle miles were operated within the district. The San Mateo County Transit District (§ 103000 at § 103021), West Bay Transit District (appx. 2, § 1.1 at § 6.31), Orange County Transit District (§ 40000 at § 40221), and respondent Santa Cruz Metropolitan Transit District are required to purchase a publicly or privately owned public utility if at least 75 percent of its revenue vehicle

[2]Unless otherwise specified, all statutory references are to the Public Utilities Code.

miles were operated within the district; in contrast, Sacramento Regional Transit District (§ 102000) is required to purchase any privately owned public utility with which it substantially competes without regard to how many revenue vehicle miles it operates within the district, but it need not purchase a publicly owned public utility.

Each of the acts provides for the creation and dissolution of the transit districts by a vote of the electors within the district. The acts provide generally for the internal organization of each district and include provisions relating to labor, retirement, taxing, bonding, and power of eminent domain. Although the provisions address themselves to similar matters, they are not identical in content.

■ Peerless contends that it has been subjected to an unconstitutional taking of property without just compensation. Two grounds are asserted in support of this argument. The first is that it has a property right for which it is entitled to be compensated under the law of eminent domain. (See fn. 1, *ante*.) The property right Peerless is asserting is, in essence, a right not to lose business to a competing, tax-supported public transit service. There is, however, no constitutional right of freedom from competition. As stated in *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, at page 657 [130 Cal.Rptr. 230]: "[There is] no authority for the proposition that plaintiffs have a right to continued availability of a particular clientele that has patronized in the past the particular commercial ventures developed by plaintiffs on their property." Similarly, in *Oakland* v. *Pacific Coast Lumber etc. Company* (1915) 171 Cal. 392, 398 [153 P. 705], the court stated, "the real contention of appellant . . . [is] that business is property, and when the taking by the state or its agencies interferes with, impairs, damages, or destroys a business, compensation may be recovered therefor. We are not to be understood as saying that this should not be the law when we do say that it is not our law. It is quite within the power of the legislature to declare that a damage to that form of property known as business or the goodwill of a business shall be compensated for, but unless the constitution or the legislature has so declared, it is the universal rule of construction that an injury or inconvenience to a business is *damnum absque injuria,* and does not form an element of the compensating damages to be awarded." Freedom from competition is not a compensable property right under the provisions of the California Constitution, article I, section 19. The loss of business goodwill is not a taking of a property right for which compensation must be paid under the Constitution. (*Community Redevel-*

*opment Agency* v. *Abrams* (1975) 15 Cal.3d 813 [126 Cal.Rptr. 473, 543 P.2d 905].)

Certain exceptions to this rule have been established in the area of public utilities. (See *Southern Calif. Edison Co.* v. *Railroad Com.* (1936) 6 Cal.2d 737, 750-751 [59 P.2d 808].) For example, under Public Utilities Code sections 1500-1506, privately owned water companies have the right to be paid just compensation for the diminution in value of their property occurring as a result of the duplication of their facilities by a political subdivision, such as a municipal or county water district. (Pollak & Downs, *The Antiparalleling Statute: A New Dimension in Public Utility Condemnation* (1972) 60 Cal.L.Rev. 1116.) Similarly, in the enactment of the legislation enabling creation of local transit districts, the Legislature has provided for the acquisition of privately owned public utilities with which a transit district contemplates competing. ■ The right to compensation because of competition by the transit district is purely statutory. Section 5, article XII of the Constitution does not bestow upon Peerless any additional rights of compensation absent legislative enactment therefor.

■ The second contention of unconstitutionality is that Peerless has been denied equal protection of the law. This argument is based upon the fact that the Legislature has arbitrarily provided different formulas among the several transit districts within the state for determining which competitors, if any, must be compensated. The question thus presented is whether the Legislature, having determined that certain "existing systems" are entitled to compensation for losses incurred by competition from a public transit system, may establish different criteria for defining existing systems among the various transit districts.

The legislative classification is presumed valid and cannot be rejected unless clearly arbitrary. (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1 [36 L.Ed.2d 16, 93 S.Ct. 1278]; *County of L. A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378 [196 P.2d 773]; see *Weber* v. *City Council* (1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *Board of Education* v. *Watson* (1966) 63 Cal.2d 829 [48 Cal.Rptr. 481, 409 P.2d 481]; 5 Witkin, Summary of Cal. Law (8th ed.) § 354, p. 3648.) The equal protection clause requires that laws of a general nature shall have uniform operation. A general statute is uniform in operation if it applies equally to all in the class to which it relates. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 863 [106 Cal.Rptr. 388, 506 P.2d

212, 66 A.L.R.3d 505]; see 2 Sands, Sutherland Statutory Construction (4th ed.) § 40.01 et seq., pp. 134-244.) Here, each transit district act applies only to a given area. Each act is approved by the electors of the area affected and each act applies uniformly to all to which it relates. As such, the particular act before us in this case satisfies the constitutional requirement of equal protection. The fact that the state adopted legislation which enabled creation of the several transit districts within the state does not require that each district have the same statutory provisions. Were respondent a state-wide transit district, as distinguished from a local transit district, clearly the statute applicable to all within the district would have to be uniform. However, this case involves a local transit district. We conclude, therefore, that Peerless has not been denied ·equal protection of the laws by virtue of the provisions of section 98300.[3]

Judgment is affirmed.

Devine, J.,* and Good, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1977.

---

[3]Recently, in *Yellow Cab of Northern Orange County* v. *Orange County Transit Dist.* (1976) 65 Cal.App.3d 268 [134 Cal.Rptr. 909], it was held that a taxicab operation was not an "existing system," as defined by section 40221, subdivision (b), which had to be purchased by the Orange County Transit District. The court recognized the differences among the various districts within the state, when it declared (at p. 279, fn. 10), "we have been mindful of the axiom that hard cases make bad law. In our view the plaintiffs' remedy lies with the Legislature which is the proper body to decide the social question of . whether private taxicab businesses must face the risk of publicly subsidized competition. For Orange County and five other areas of the state the Legislature has decided they must sustain such a risk. In Santa Clara County, for instance, the Legislature has decided that they should not. We see no basis for the legislative distinction." (See also *Palo Alto-Menlo Park Yellow Cab Co., Inc.* v. *Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121 [135 Cal.Rptr. 192].)

*Retired Presiding Justice of the Court of Appeal assigned by the Chairman of the Judicial Council.

†Retired judge of the Superior Court assigned by the Chairman of the Judicial Council.